IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CONSUELLA GRIFFIN, as mother }
and next friend of Aaliyah }
Moreland, a minor and natural }
child of Andrew Moreland, }  Case No. 2:12-CV-2378-WMA
Jr., deceased, }
 }
    Plaintiff, }
 }
 }
MODULAR TRANSPORTATION }
COMPANY and ROBERT D. }
PHINIZEE, }
 }
    Defendants. }

## MEMORANDUM OPINION AND ORDER

    The court has for consideration the motion filed on March 5, 2014, by defendants seeking a reconsideration of the memorandum opinion and order of March 3, 2014, and an amendment to or vacation of that order. The motion brings to the court's attention what the court failed to comprehend from reading the briefs filed in support of and in opposition to defendants' previous motion for partial summary judgment, seeking an adjudication that plaintiff, Consuella Griffin ("Griffin"), cannot proceed on a claim of wantonness.

    Defendants' earlier brief argued other reasons for an eliminating the claim of wantonness, but did not make clear to the court the reason it now asserts for distinguishing between negligence and wantonness. Because the distinction affects defendants' defense of contributory negligence, the court will address the merits of their argument for partial summary judgment.

For the reasons stated below, defendants' motion for partial summary judgment is DENIED.

## BACKGROUND

The collision that caused the death of Andrew Moreland, Jr. ("Moreland") happened between 5:15 A.M. and 5:45 A.M. on Monday, June 11, 2012. It took place on Highway 79 just north of the intersection of Valley East Industrial Drive in Birmingham, Alabama.[1] That portion of Highway 79 passes through an industrial park and has four lanes divided by a grassy median.

The collision occurred while Phinizee was backing up an 18-wheel flatbed tractor trailer perpendicularly across Highway 79, thereby blocking the two southbound lanes for an unknown period of time.[2] The trailer had its back flashers on and had one side light on in the middle of the flatbed. Keith Jones ("Jones") was driving a pickup truck in the inner southbound lane and noticed the trailer blocking the southbound lanes when he was approximately 100 yards away. Although he could not see the flashers very well, Jones had time to come to a controlled stop. Moreland was driving his car in the outer southbound lane next to and slightly behind Jones's

---

[1] Pursuant to Rule 56, Fed. R. Civ. P., the court views all admissible evidence in the light most favorable to Griffin and draws all reasonable inferences in her favor.

[2] Defendants claim that Phinizee was turning into the driveway, not backing up, at the time of the collision. However, they acknowledge that the interpretation of facts most favorable to Griffin would be that Phinizee was backing up into the southbound lanes.

truck.  If Moreland slowed down as he neared the trailer, he did not slow down enough to prevent his car from colliding with the flatbed with such force that it became wedged underneath it.

Phinizee testifies that he does not remember feeling the impact.  He became aware of a problem when his trailer would not move forward after Moreland's car became wedged underneath it.  Phinizee started to exit the trailer cabin to identify the problem when another motorist approached the cabin, told Phinizee that a car had collided with the trailer and that the car was on fire, and asked for Phinizee's fire extinguisher.  Phinizee called 911, went to assist with the fire, then returned to the cabin to move the trailer in an attempt to dislodge Moreland's car.  Moreland's car exploded before it could be dislodged and before Moreland could be pulled from it.

The trailer was in the area of the collision because Modular had assigned Phinizee to transport steel coils from Chicago to Birmingham.  Phinizee picked up the steel coils the Friday before the collision.  He stayed at his uncle's friend's house in the Nashville area on Saturday and Sunday then drove the trailer to Birmingham early on Monday morning.  Phinizee used the delivery address on the bill of lading as his destination on his personal GPS device.  Phinizee had his GPS device in the trailer cabin on the dashboard because he had never been to the delivery address before.  The GPS device caused Phinizee to turn left into a

driveway on Highway 79, but the correct delivery address was further south. Griffin claims that when Phinizee realized his error, he backed up the trailer to get back on Highway 79 southbound, and it was then that the collision occurred.

Many facts relating to the collision come from Jones's account because Phinizee says that he does not remember much about the accident. He claims to not remember whether he backed up at all, how long he blocked the southbound lanes before the collision, and whether he realized at the time that he was blocking the southbound lanes. Phinizee contends that he thought he was turning into the driveway of the correct delivery address, although he does not remember if he backed up, so he cannot refute that part of Griffin's narrative. Phinizee also contends that he put his GPS device on mute before turning into (or backing up from) the driveway. Griffin speculates that Phinizee was looking at his GPS device while backing up across the highway.

The parties agree that it was dark with misty rain at the time of the collision, but they do not agree on the degree of visibility or the traffic conditions. Jones, a regular commuter, describes the normal traffic at that time of day as variant: "[s]ometimes it's busy, and sometimes it's not. It's just hitting it." Doc. 27-3, p.10. Jones does not recall seeing anyone in the southbound lanes other than himself, Moreland, and Phinizee. Phinizee notes that two unidentified men appeared after the collision to help

4

direct traffic and to try to extinguish the car fire; these men may or may not have been other drivers. Phinizee gave no testimony that directly addressed the traffic conditions. From this evidence, Griffin claims that the collision occurred during busy morning traffic, and Phinizee knew or should have known that employees in industrial parks work early hours. Defendants note Jones's testimony regarding normal traffic conditions but, otherwise, say only that the state of traffic at the time of the collision is unknown.

## DISCUSSION

To grant summary judgment, a court must determine that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For the purposes of summary judgment, the court views all admissible evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The court's function does not extend to "weigh[ing] the evidence and determin[ing] the truth of the matter" but is limited to "determin[ing] whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

Defendants move for partial summary judgment on the claim of wantonness.  In Alabama, wantonness requires conduct undertaken with knowledge of the existing conditions and with consciousness that injury will likely or probably result. *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (quoting *Bozeman v. Cent. Bank of the S.*, 646 So.2d 601 (Ala. 1994)).  Determining defendants' knowledge and consciousness does not require direct proof and may rest on reasonable inferences drawn from the circumstances. *Klaber v. Elliott*, 533 So.2d 576, 579 (Ala. 1988).  A plaintiff must show substantial evidence of wantonness for the court to submit the issue to a jury. *See* Ala. Code § 12-21-12 (1975); *Phillips ex rel. Phillips v. United Servs. Auto. Ass'n*, 988 So.2d 464, 467 (Ala. 2008).  Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *Phillips*, 988 So.2d at 467 (quoting *West v. Founders Life Assurance Co. of Fla.*, 547 So.2d 870, 871 (Ala. 1989)).

Evaluating a claim of wantonness in operating a motor vehicle, as in the present case, must begin with *Ex parte Essary*, 992 So. 2d 5 (Ala. 2007).  In *Essary*, the plaintiff claimed that the defendant had stopped at a 2-way stop sign and, seeing an oncoming car, tried to "shoot the gap." *Id.* at 12.  The Alabama Supreme Court found that this scenario does not show wantonness because the defendant would not have tried to "shoot the gap" if he had thought it likely

to result in injury to himself. *Id.* Thus, the Court formulated the "*Essary* presumption": courts do not expect people to "engage in self-destructive behavior" and will presume against wantonness when the risk of injury to the actor is as real as the risk of injury to others. *Id.*

The *Essary* presumption has two explicit exceptions and a third implicit exception. *See id.* The presumption against self-destructive behavior does not apply (1) if there is "some evidence of impaired judgment," such as alcohol consumption, or (2) if the conduct "is so inherently reckless that we might otherwise impute to [the actor] a depravity consistent with disregard of instincts of safety and self-preservation." *Id.* Although not discussed in any case, an implicit exception logically applies (3) if the risk of injury to the actor is somehow **not** as real as the risk of injury to others. *See Jinright v. Werner Enters.*, 607 F.Supp.2d 1274, 1276-77 (M.D. Ala. 2009) (the *Essary* presumption applies "in *most* cases involving car accidents") (emphasis added). The second and third exceptions bear on the present case.[3]

---

[3] Although Griffin also invokes the first *Essary* exception of impaired judgment, her grounds are insufficient. Griffin claims that Phinizee had impaired judgment based on his lack of memory of the collision, his lack of sleep, and his looking at the GPS device while backing up the trailer. She does not allege any cause for Phinizee's memory lapses that could also show impaired judgment, *e.g.*, alcohol consumption. Griffin has no evidence for alleging that Phinizee lacked adequate sleep and, indeed, she says in a brief that he "slept an appropriate period" beforehand. Pl. Resp. 2. Also, if Phinizee was looking at a GPS device while backing up the trailer, such an action might be an error of judgment, but it would not impair his judgment in

The second exception to the *Essary* presumption for inherently reckless conduct is best exemplified by *Johnson v. Baldwin*, 584 F.Supp.2d 1322 (M.D. Ala. 2008).  In *Johnson*, the defendant began driving in reverse in a lane on Interstate Highway 85. *Id.* at 1323.  Although the defendant claimed that she thought she was driving on the shoulder, evidence inconsistencies made it possible for a jury to conclude that the defendant knew that she was driving in a regular lane. *Id.* at 1327.  Driving in reverse in a lane of a major interstate created a high probability of injury to others and qualified as inherently reckless such that it met the second *Essary* exception. *Id.*  Thus, there was no presumption against wantonness even though the driver risked injury to herself. *Id.* at 1328.

A case consistent with the second *Essary* exception that strongly resembles the present case is *Valley Bldg. & Supply, Inc. v. Lombus*, 590 So. 2d 142 (Ala. 1991).  In *Valley*, an 18-wheel tractor trailer delivered roofing materials to a business on Highway 280 during "rush hour" in Childersburg, Alabama. *Id.* at 143-44.  An employee told the trailer driver that in order to allow the trailer to exit he and a customer would stop traffic so that the driver could back out safely onto Highway 280. *Id.* at 143.  As the trailer backed out, a car collided with it, killing the car driver. *Id.*  The car driver's estate claimed that the employee had acted wantonly. *Id.*  According to the Court, a jury could conclude

---

the same manner as alcohol would.

that the employee was aware that it was rush hour; that he did not use any warning devices to stop traffic; that he signaled the trailer to back out anyway; and that other cars driving towards the trailer were not braking as they neared it. *Id.* at 144-45. The Court found that these facts constituted substantial evidence of wantonness. *Id.* at 145. Although *Valley* was decided before *Essary*, the facts of *Valley* are consistent with the second *Essary* exception for inherent recklessness, namely, highly probable injury to others.

   This court finds that a jury could reasonably conclude that the second *Essary* exception for inherent recklessness applies to the present case. Taken in the light most favorable to Griffin, the facts indicate that Phinizee backed out his trailer across Highway 79, which blocked the two southbound lanes for an unknown period of time. Although Phinizee's conduct is less egregious than the driver's conduct in *Johnson*, these facts strongly resemble *Valley* with some variance in traffic and weather conditions. The evidence of busy traffic is less compelling here than in *Valley*, which weighs against finding comparable wantonness. *See id.* at 144-45. The darkness and the misty rain, however, made the weather in the present case more dangerous than in *Valley*. *See id.* Reduced visibility would make it harder for other drivers to see the flatbed trailer with its one side light, which weighs in favor of finding comparable wantonness. Although the facts do not precisely

9

mirror *Valley*, the evidence as a whole would allow a jury to reasonably find that Phinizee's conduct was inherently reckless such that the *Essary* presumption against wantonness does not apply.

The *Essary* presumption also does not apply to the present case because of the implicit third exception. The *Essary* presumption presupposes that the risk of injury to the actor is as real as the risk of injury to others. *See Jinright v. Werner Enters.*, 607 F.Supp.2d 1274, 1276-1277 (M.D. Ala. 2009). This presupposition is typically true for collisions involving two-passenger vehicles like cars and SUVs. However, the present case involves an 18-wheel tractor trailer. Only the flatbed portion of Phinizee's tractor trailer was blocking Highway 79—not the trailer cabin with the driver's seat. Doc. 27-3, p. 17. A collision between a car and the **flatbed portion** of a tractor trailer does not carry the same risk of injury to the trailer driver as it does to the car driver. Indeed, Phinizee testified that he did not even realize that the collision had occurred until he had trouble moving the trailer forward and someone approached the cabin to tell him about Moreland's car. In the limited circumstance where a trailer driver does not have as real a risk of injury as the drivers of any passenger vehicles that collide with the flatbed do, the *Essary* presumption against the trailer driver's wantonness does not apply.

Without having to overcome the *Essary* presumption, the court finds that Griffin has presented substantial evidence of

wantonness. Wantonness requires that the actor knew of the existing conditions and was conscious that injury would likely or probably result. *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (quoting *Bozeman v. Cent. Bank of the S.*, 646 So.2d 601 (Ala. 1994)). A jury could reasonably conclude from the circumstances that Phinizee knew about the weather and the traffic conditions, which, although disputed, the evidence shows to be busy enough that multiple vehicles encountered the trailer while it was blocking the southbound lanes. A jury could also reasonably infer that Phinizee was conscious that backing up the trailer and blocking the southbound lanes was likely to result in injury to others. With substantial evidence for the required elements, defendants' wantonness remains a fact question for a jury to decide.

Having determined that Griffin's wantonness claim will proceed, the court now addresses defendants' argument that a jury could not award punitive damages against Modular based on Phinizee's conduct without showing that Modular has a higher degree of culpability pursuant to ALA. CODE § 6-11-27 (1975). This argument is without merit. The Supreme Court of Alabama has unequivocally stated that "[i]t is well-settled" that the evidentiary burden imposed by § 6-11-27 "does not apply in wrongful-death cases." *Boudreaux v. Pettaway*, 108 So. 3d 486, 495 (Ala. 2012) (citing *Cain v. Mortg. Realty Co.*, 723 So.2d 631, 633 (Ala. 1998)).

**CONCLUSION**

Interpreting the facts in the light most favorable to Griffin, she has presented sufficient evidence of defendants' wantonness to present a genuine factual dispute for trial.  Accordingly, the court VACATES its order of March 3, 2014, and DENIES defendants' motion for partial summary judgment on the claim of wantonness.

DONE this 6th day of March, 2014.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE